UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60919-CIV-COHN/SELTZER

NANCY CAROL NIGRO,

    Plaintiff,

vs.

OFFICER E. CARRASQUILLO,
individually and in his official capacity,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT CARRASQUILLO'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Elias Carrasquillo's Motion for Summary Judgment [DE 37] ("Motion"). The Court has considered the Motion, Plaintiff's Response [DE 42], and Defendant's Reply [DE 45]. The Court has reviewed the Record in this case and is otherwise advised in the premises.

Plaintiff Nancy Nigro brings this Section 1983 action against Officer E. Carrasquillo in both his individual and official capacities[1] for allegedly using excessive force while detaining Plaintiff under Florida's Baker Act, Fla. Stat. § 394.451, *et seq*. For the reasons that follow, the Court will **GRANT** Officer Carrasquillo's Motion and enter summary judgment in his favor.

---

[1] A suit against an officer in his official capacity is effectively a suit against the entity to which the officer belongs. See 473 U.S. 159, 165–66 (1985). Plaintiff has not served the City, however.

I.      Standard

The Court will grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56, the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rely merely on allegations or denials in its own pleading, but instead must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56; Matsushita, 475 U.S. at 587.

As long as the non-moving party has had ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). Further, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. "When opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." Id.

**II.     Background**

This action stems from Officer Carrasquillo's efforts to arrest Plaintiff Nigro on September 7, 2014.  On that day, Officer Carrasquillo and other officers responded to a report that Nigro was causing a disturbance in her neighborhood.  [DE 39-1 at 2.]  After Officer Carrasquillo arrived at the scene, he spoke to Plaintiff Nigro's neighbors.  [Id.]  The neighbors told Officer Carrasquillo that Nigro had yelled and thrown a painting at them.  [Id.]  This painting missed the neighbors but hit a car, causing superficial damage.  [Id.]

At this point, Officer Carrasquillo had no explanation for Plaintiff's behavior and believed that detention under Florida's Baker Act might be appropriate.  [Id.]  In a deposition more than a year after the incident, Plaintiff Nigro acknowledged that she was upset that day.  [DE 39-3 at 3.]  Further, she testified that she might have been off her medication for certain psychiatric conditions.  [Id. at 10.]  Officer Carrasquillo spoke with Plaintiff Nigro and decided that she should be taken into custody for medical evaluation.  [Id. at 15–16; DE 39-1 at 2.]  Nigro does not sue over the legality of the decision to arrest her.

Instead, Nigro sues over what happened next.  The officers handcuffed Plaintiff and placed her in the back of a patrol car.  According to Nigro's deposition testimony, she felt that she did not need to be handcuffed.  [DE 39-3 at 16.]  When Officer Carrasquillo informed her that he used the handcuffs due to concerns for his safety, Nigro felt disrespected and antagonized.  [Id. at 17.]  She testified that this exchange

was "pushing buttons emotionally . . . . bop bop bop." [Id.] She decided to stand up for herself. [Id. at 21.]

Nigro began to scream. [Id. at 25.] She became concerned for her disabled son who was still in her house. [Id. at 25–26.] Further, she became "very angry" because she felt that Officer Carrasquillo was trying to deliberately provoke her, because "he is an asshole." [Id. at 27.] She began to call Officer Carrasquillo names and "wanted out" of the police car because she was angry and claustrophobic. [Id. at 29.]

Officer Carrasquillo and one of Nigro's neighbors testified that, at this point, Nigro began to kick the police car's rear passenger-side window. [DE 39-1 at 3; DE 39-4 at 9.] Photographs reveal that during the course of the incident, Nigro managed to kick the window casing out of the doorframe. [DE 39-7 at 1–3.] In response, Officer Carrasquillo pepper sprayed her. [DE 39-1 at 3; DE 39-4 at 10.] He used a two-second burst of spray. [Id.] This caused Nigro to calm down for a few minutes, but she then resumed kicking the window. [Id.] Officer Carrasquillo sprayed her again for two seconds. [Id.]

Plaintiff Nigro took some issue with this sequence of events at her deposition. At one point during the depostition, she testified that she only began kicking the police car's window after Officer Carrasquillo pepper sprayed her the first time. [DE 39-3 at 33.] However, she later conceded that she didn't know if she began kicking the window before Officer Carrasquillo pepper sprayed her. [Id. at 36.] She conceded that she was angry at this point and wanted out of the car. [DE 39-3 at 29.] Further, Plaintiff's neighbor, who is a disinterested witness, testified unequivocally that Plaintiff began kicking the window several minutes before being pepper sprayed. [DE 39-4 at 9.] In

4

light of this record, no reasonable juror could credit Plaintiff Nigro's assertion that Officer Carrasquillo pepper sprayed her before she began to kick the police car's window.

Nigro finally calmed down after the second application of pepper spray. [DE 39-1 at 3-4; DE 39-4 at 10–11.] Officers placed her in leg shackles and a spit mask, and summoned an ambulance to treat her for her pepper-spray exposure and to take her to a hospital. [Id.]

Based upon these facts, Nigro sues under 42 U.S.C. § 1983. [DE 1 at 10.] She alleges that Officer Carrasquillo violated her Fourth Amendment right to be free from unreasonable seizure by using excessive force when he pepper sprayed her even though police had already handcuffed her and placed her in the back of a police car. [Id. at 11.] Plaintiff sues for injunctive relief, damages, and attorneys' fees. [Id.]

### III.     Discussion

The Court will grant Officer Carrasquillo's Motion and enter summary judgment in his favor. Officer Carrasquillo's decision to pepper spray Plaintiff Nigro in response to her violently resisting arrest pursuant to Florida's Baker Act is not contrary to clearly established law. Accordingly, Officer Carrasquillo is entitled to qualified immunity.

Qualified immunity protects government officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal quotations omitted). Such immunity is intended "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (internal quotations omitted). In this respect, qualified immunity "'gives government officials breathing room to make reasonable but mistaken

5

judgments.'" Carroll v. Carman, 135 S. Ct. 348, 380 (2014) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731 (2011)).

"To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Wood, 323 F.3d at 877 (internal quotation marks omitted).  If the official makes this showing, the burden shifts to the plaintiff to overcome the privilege of qualified immunity.  See Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009).  To meet this burden, the plaintiff must prove (1) that the defendant violated a statutory or constitutional right and (2) that this right was "clearly established at the time of the challenged conduct." Carroll, 135 S. Ct. at 350.  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand what he is doing violates that right.'" Id. (quoting Andersoln v. Creighton, 483 U.S. 635, 640 (1987)).  Although "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083.

Here, Officer Carrasquillo acted within his discretionary authority in using pepper spray to subdue Plaintiff Nigro during the course of her detention.  "Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers." Mears v. McCully, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012) (footnote citations omitted).  The burden therefore shifts to Nigro to overcome the qualified-immunity defense.  She has failed to do so.

"The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force" during apprehension. Mercado v.

City of Orlando, 407 F. 2d 1152, 1156 (11th Cir. 2005).  "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.  Applying this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  Id.  A court must also bear in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.  Id. at 397.

There is a substantial body of Eleventh Circuit law concerning when the use of pepper spray constitutes excessive force, and when it does not.  "Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002).  "Courts have consistently concluded that using pepper spray is reasonable, however, where the plaintiff was either resisting arrest or refusing police requests, such as requests to enter a patrol car or go to the hospital." Id.

7

"Pepper spray is an especially noninvasive weapon and may be one very safe and effective method of handling a violent suspect who may cause further harm to himself or others." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1345 (11th Cir. 2003). It is "of limited intrusiveness" and designed to disable a suspect without causing permanent physical injury." Vinyard, 311 F.3d at 1348. It "is a very reasonable alternative to escalating a physical struggle with an arrestee." Id.

Though in dicta, the Eleventh Circuit has addressed a situation very similar to that presented here. In Vinyard v. Wilson, the Eleventh Circuit observed that according to police narrative, a handcuffed arrestee began kicking the window of a police car while it was underway. Id. at 1348 n.9. The arrestee "kicked at the back seat of the patrol car, kicked a window, and beat her head against a window presenting a safety risk to herself." Id. "She also tried to kick [the officer.]" Id. The Eleventh Circuit remarked that pepper spraying an arrestee in such circumstances "was clearly not excessive." Id.

Plaintiff offers little contrary case law. In opposition to Defendant's Motion, Plaintiff points to the undersigned's prior decision in Fertil v. Guzman, No. 14-60494, 2014 WL 5522889, at *1 (S.D. Fla. Oct. 31, 2014), the Middle District of Florida's decision in Musgrove v. City of Cocoa, No. 6:14-cv-379-Orl-40GJK, 2015 WL 5354740, at *6 (M.D. Fla. Sep. 14, 2015), and the Eleventh Circuit's opinion in Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010). Plaintiff also cites to several cases from outside the Eleventh Circuit, and the Eleventh Circuit's Vinyard decision (discussed above), that actually supports Defendant's position.

None of these cases support Plaintiff's argument that Officer Carrasquillo's actions violated clearly established law. As Plaintiff acknowledges, the pertinent

8

language in Fertil and Musgrove concerns the use of pepper spray on arrestees who have already been adequately restrained.  See Fertil, 2014 WL 5522889, at *7 (stating in dicta that an officer who "applies pepper spray to a suspect who is already handcuffed and secured in the back seat of a patrol car" violates the suspect's Fourth Amendment Rights); Musgrove, 2015 WL 5354740, at *6 ("[N]o objectively reasonable police officer . . . would believe he could lawfully pepper spray an arrestee in the face where the arrestee was lying on the ground in handcuffs not resisting or acting violently.").  Further, Thomas v. Bryant concerns "non-spontaneous," deliberate, and punitive chemical spraying in the Florida prison system, and therefore likewise addresses a situation in which the subject is under control.  614 F.3d at 1297.  Plaintiff's out-of-circuit case law suffers similar deficiencies.

It is true that "[e]ven in the absence of factually similar case law, an official can have fair warning that his conduct is unconstitutional when the constitutional violation is obvious."  Alexander v. Bostic, 458 F.3d 1295, 1306 (11th Cir. 2006).  But Plaintiff does not present such a case.  Officer Carrasquillo does not appear to have acted unreasonably or used excessive force when he pepper sprayed Plaintiff.  Rather, the evidence shows that Officer Carrasquillo applied short bursts of pepper spray in response to Plaintiff's actively and violently resisting arrest by kicking a patrol car door repeatedly and hard enough to dislodge the window from its frame.  Officer Carrasquillo's use of such minimal force was reasonable to prevent Plaintiff from further damaging the patrol car, attempting to flee, or injuring herself or others.

Accordingly, Plaintiff has failed to carry her burden to show that Officer Carrasquillo is not entitled to qualified immunity. Plaintiff's claim for excessive force fails, and the Court will enter summary judgment in Officer Carrasquillo's favor.

## IV.    Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

Defendant's Motion for Summary Judgment [DE 37] is **GRANTED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of December, 2015.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.